CHRISTIAN, J.
These two cases were heard together at the late session of this court at Wytheville. They *were proceedings instituted for the purpose of testing the question before this court, as to who is now and at the time the said proceedings were instituted, the lawfully qualified judge of the county court of Halifax county.
The first-named case (McCraw v. Sup. of Penitentiary) will be first disposed of.
The record in this case discloses the following state of facts. Celia McCraw was indicted by a grand jury in the county court of Halifax, for the murder of her infant child recently born. On the 27th April, 1880, she was tried in said court, found guilty of manslaughter. and the term of her imprisonment ascertained by the jury to be one year in the penitentiary. She was accordingly sentenced by the county judge, and sent to the penitentiary to serve out the term of her imprisonment. While confined in the penitentiary she applied to the FIon. Beverley R. *516 Wellford, for a writ of habeas corpus which was awarded. Upon the hearing of her case she was remanded to the custody of the superintendent of the penitentiary to serve out the term for which she was sentenced.
To this judgment a writ of error was awarded by one of the judges of this court.
I am of opinion that there is no error in this judgment.
The sole ground urged for the discharge of the prisoner, in her petition for a writ of habeas corpus, and in argument here, is that she was convicted in a county court held by E. W. Armistead, “who did unlawfully intrude himself into and usurp the office of county judge of Halifax county; and did unlawfully assume upon himself and undertake to hold a term of the county court of Halifax county:” at which term the prisoner was indicted, tried and convicted; and the petitioner insisted that her conviction and sentence to *the penitentiary was void, having been obtained before and pronounced by a judge having no authority to hold said court.
The circuit court of Richmond was clearly right in dismissing the petition and remanding the prisoner to custody.
. At the time of indictment, trial, and conviction of the prisoner, Judge Armistead was certainly a judge de facto, holding his office under color of title. He was then in office by virtue of his election by the legislature and his commission by the governor. At that time there was no question as to his authority to hold the court, nor was there any person claiming and asserting title to the office into which he had been duly installed.
The record shows that on the 27th January, 1880, E- W. Armistead was elected by a joint vote of the two houses of the general assembly judge of the county court of the county of Halifax. That on the 9th day of February, 1880, he was commissioned by the governor “for the term of office prescribed by law;” that on the 20th day of February he qualified under this commission by taking the oaths prescribed by law, and on the 23d February had his commission and certificate of qualification recorded on the order book of Halifax county court; and on that day took his seat on the bench.
Under this state of facts it is plain that Judge Armistead was certainly exercising the duties of his office under color of, the highest legislative and executive authority, and that all his acts, judgments, decrees, and orders, while so acting, were valid and binding, and cannot be enquired into; but must be recognized in all cases where the county court of Halifax has jurisdiction as a final determination of such cases, except when reversed on appeal or writ of error.
*This doctrine is well settled by the decisions of this court, as well as those of numerous cases. English and American, and approved by all text writers of acknowledged authority. See Griffin’s ex’or v. Cunningham, 20 Gratt. 31, 43; Quinn v. Commonwealth, 20 Gratt. 138, 141; Bolling v. Lersner, 26 Gratt. 36; Blackwell Tax Titles. 92.
The distinction between an officer de jure, one who is de facto, and a mere usurper, is web known and clearly defined. An officer de jure has the legal title to, and is clothed with, all the power and, authority of the office. He has a title against the world to exercise the functions of the office and receive the fees and emoluments appertaining to it. He is responsible to the government and injured parties when he abuses his trust or transcends his authority. But his acts within the scope of that authority cannot be questioned by the citizen or any department of the government.
An officer de facto is one who comes in by the power of an election or appointment, but in consequence of some informality, or want of qualification, or by reason of the expiration of his term of service (or it may be said also by. entering upon the duties of his office before his term of service fixed by law begins), cannot maintain his position when called upon by the government to show by what title he holds his office. He is one who exercises the duties of an office under claim and color of title, being distinguished on the one hand from a mere usurper, and on the other from an officer de jure. A mere usurper is one who intrudes himself into an office which is vacant, and ousts the incumbent without any color of title whatever; and his acts are void in every respect.
The following definition of Ford Ellen-borough has been adopted by text writers, as more accurate and *expressive than any other, is as follows: “An officer de facto is one who has the reputation of being the officer he assumes to be, and is yet not a good officer in point of law.”
The rule which declares that the acts of an officer de facto are as valid and binding as if he were an officer de jure, is founded on the soundest principle of public policy, and is absolutely essential to the protection of the best interests of society. Indeed the affairs of society could not be conducted on any other principle. To deny validity to the acts of such officers, would lead to confusion and insecurity, in public as well as private affairs, and thus oppose the true policy of every well regulated State.
In the case before us Celia McCraw. the petitioner, held in custody of the Superintendent of the Penitentiary, was tried and convicted in a court of competent jurisdiction presided over by a judge who held his office under color of authority of his appointment by the legislature and commission of the governor. If he was not judge de jure at the time of the trial and conviction, he was certainly a judge de facto, and his judgment is as valid and binding as if he was judge dejure.-
The case of Quinn v. The Commonwealth, 20 Gratt. (supra), is a case exactly in point. That case ame before this court upon a petition for writ of habeas corpus, presented by the prisoner convicted of- a felony and sentenced three years in the penitentiary by the hustings court of the city of Richmond *517 presided over by Charles H. Bramhall. The prisoner based his application for a discharge upon the ground, that the said Bramhall, who presided at the term of the said court at which prisoner was convicted and sentenced, being a military appointee of the Federal government *was not authorized to exercise the functions of a judge after the restoration of civil government in Virginia.
It was held that Judge Bramhall was a judge de facto, and his judgment valid and binding, and the prisoner was remanded to custody. Judge Staples in delivering the opinion of the court in that case, refers to two cases so apposite to this that I refer to them here, as being recognized as authority by this court. The one is State v. Bloom, 17 Wisc. R. 521, and the other People v. White, 24 Wend. R. 520.
In the first named case it was held that where a party was indicted, convicted and sentenced at a term of a circuit court held by a person who exercised the office of judge of said court under an appointment by the governor. without authority of law, there being no other person entitled to said office, the sentence was nevertheless valid and binding. It was so decided upon application for a writ of habeas corpus after a judgment of ouster had been pronounced against the-judge, upon the ground that he had been so illegally appointed. In the other case (24 Wend. 520) it was said “that where an officer having an apparent authority to do the act, had rendered judgment between the people and the prisoner, neither party can in a collateral way call in question the title of the judge. The government may try the title by quo warranto, but until that is done his acts are valid and effectual so far as third persons are concerned.”
After commenting upon these cases, Judge Staples refers to Griffin's ex’or v. Cunningham to show that, both the dissenting judges concurred with the majority in recognizing the principles which govern the acts of a de facto officer.
In Bolling v. Lersner, supra. Judge Mon-cure referring to the case of Griffin’s ex’or v. Cunningham and Quinn v. The Commonwealth, shows that the court was unanimous *with respect to the doctrine herein declared, as to the validity of the acts of a de facto judge.
Guided by these authorities, and for the reasons already given, I am of opinion, that the trial, conviction and sentence of the petitioner Celia McCraw were valid and binding acts, and cannot be enquired into by this court or elsewhere; and that there is no error in the judgment of the circuit court of Richmond in remanding the prisoner to the custody of the Superintendent of the Penitentiary, and that the same be affirmed.
In the second case (that of Estes v. Ed-mondson, sheriff), the question is directly raised and must be decided by this court, who is now, and, was at the time these proceedings were instituted, to w’t, on the 14th day of Tuly, 1880. the lawfully constituted judge of the county court of Halifax county. In deciding this question, it is not necessary to look to the ex parte affidavits filed with the record, or to consider at all the question argued at the bar, whether Judge Armistead the acting judge, is a party to this proceeding. The sole question we have to determine, is, whether, upon the conceded facts disclosed by the record, the petitioner who applied for, and was awarded a writ of habeas corpus from this court, is unlawfully held in custody. It matters not whether either of the parties claiming the office are made parties to this proceeding. This court has by the express terms of the Constitution original jurisdiction in cases of habeas corpus. Any citizen may apply to it directly for relief when imprisoned or detained in custody unlawfully. And this court upon the petition of the party invoking its original jurisdiction for a writ of habeas corpus, will only consider and determine the question whether the party in prison, or in custody, is lawfully, or was lawfully so held, or deprived of his liberty. The only necessary parties to *such a proceeding are the petitioner , or petitioners, and the person, or persons, alleged to hold him, or them in such unlawful custody.
In the case before us, the party charged with exercising the unlawful custody, for which the petitioner has obtained a writ of habeas corpus, from this court, is Henry A. Edmondson, sheriff of Halifax, and he alone is a necessary party as respondent to the writ.
The writ in this case was awarded upon the petition of James P. Estes which alleged that on the 5th May, 1880, the Hon. William R. Barksdale late judge of the county court of Halifax county, delivered to the petitioner a writ of habeas corpus awarded by him, and directed to the sheriff of Halifax county, commanding him to produce before him, the said William R. Barksdale, at his office at Halifax courthouse, the bodies of certain parties naming them, with the cause of their caption and detention. That petitioner did not obey said writ, but endorsed thereon his refusal in the following words to-wit;
“I respectfully decline to obey the mandate of the within writ of habeas corpus, on the ground that Wm. R. Barksdale is not the legally qualified judge of Halifax county, but that E. W. Armistead is the legally qualified judge of said county.
“(Signed) Jas. P. Estes,
“Deputy sh’ff for Henry A. Edmondson, sh’ff of Halifax county.”
That thereupon the said William R. Barks-dale imposed upon petitioner a fine of fifty dollars for his contempt in refusing to obey the mandate of said writ, and made out and signed an order of commitment in the fol-ing words:
*“For reasons appearing to me Jas. P. Estes is fined the sum of fifty dollars for his failure to obev the within writ of habeas corpus, by bringing the. bodies of petitioners before me; and the said Estes.is committed to jail, until said fine is discharged.”
“(Signed) Wm R. Barksdale.
“Judge of Halifax county.”
*518 Petitioner then alleges that under and by virtue of said order of commitment alone, H. A. Edmondson, sheriff of Halifax county, claims the right to detain him in custody. And then the petitioner, after detailing at lengththe reasons why WilliamR. Barksdale had no authority to impose said fine, and order his commitment till paid, prays that this court may award a writ of habeas corpus directing the said sheriff to produce before this court the body of petitioner, with the cause of his caption and detention, that the same may be enquired into and petitioner discharged. The writ was accordingly awarded by this court, at its late session at Wytheville, returnable on the second day of August. On that day the respondent Edmondson made the following return to said- writ:
“In obedience to the writ of habeas corpus hereto annexed, I have here now before this court, the body of James P. Estes named in said writ; and for cause of his caption and detention, say, that said Estes was - taken, and is detained in custody, under and by virtue of an order of commitment made and signed by Hon. Wm. R. Barksdale, county . court judge of Halifax county — a copy of which order and of the proceedings in which it was made, is herein filed as part of this return.”
The respondent then states at some length » the grounds upon which he recognized the authority, and *obeyed the order of Hon. William R. Barksdale, as the rightful and lawfully constituted judge of the county court of Halifax.
It thus appears that upon the petition for the writ of habeas corpus and the return of the respondent, the issue, and the sole issue, we have to determine upon the conceded facts in the record, is whether the petitioner is lawfully or unlawfully detained in the custody of the respondent. This question can only be solved by the further enquiry. Who was the lawfully constituted judge of the county court of Halifax county at the time Estes, the petitioner, was committed to the custody of the respondent? If at the time of said commitment Hon. Wm. R. Barksdale was the lawfully constituted judge, then Estes is lawfully in custody of the sheriff of said county, and must be remanded to said custody until he shall have paid the fine imposed on him for contempt. On the other hand, if Hon. E. W. Armistead was the lawfully constituted judge of said county court, then the commitment of Estes by Barks-dale was void and a mere nullity, and the petitioner must be discharged.
We must, therefore, now determine', upon the conceded facts in the record, and in the light of the decisions of this court, whether Barksdale or Armistead is the rightful and legally constituted judge of the county court of Halifax county.
The following facts are conceded: Hon. Thomas Leigh, judge of the county court of Halifax, died in December, 1873. On the 9th January, 1874, Wm. R. Barksdale was elected by the general assembly “to fill the vacancy” occasioned by Judge Leigh’s death. Barks-dale qualified under his commission on 15th January, and on the 26th January, 1874, his commission and certificate of qualification was spread upon the order book of the county. court of Halifax, when *he took his seat on the bench of that court. From that day (to-wit: 26th January, 1874), until the 23d February, 1880, he continuously discharged his duties as judge of the county court of Halifax.
On the 27th day of January, 1880, E. W. Armistead was elected by the general assembly county judge of Halifax county.'On the 9th February, 1880, he was commissioned by the governor “for the term of office prescribed by law.” On 23d February he took his seat on the bench, and had recorded his certificate of qualification and commission.
At that time Barksdale made no objection by way of protest or otherwise, but resumed the practice of law in that court. Sheriff, clerk, and other officers of the court recognized the authority of Judge Armistead.
It was only after the decisions of this court in several cases construing the constitutional provisions relating to the terms of office of the county judges that Barksdale claimed that he was the lawfully constituted judge, of the county court of Halifax, and exercised the functions of his office by issuing a writ of habeas corpus, which was the foundation of the proceedings now before this court in the present case.
These are the conceded facts in the case.
Looking to these facts and to the decisions of this court, I arrive at the following conclusions:
First. That although Barksdale was elected and commissioned to fill the vacancy occasioned by the death of Judge Leigh, he was, upon the true construction of the Constitution, entitled to fill the full term of the office of county judge. This question was determined, after elaborate argument and careful consideration, in the “Prince William Judge case” — Judge Burks not sitting — in which it was held by this court that under our Constitution a judge elected to fill an unexpired term, or vacancy occasioned *by the death or resignation or removal of the incumbent, is in the office for the full term. It would be a work of supererogation to reproduce here the reasons and the authorities upon which this court founded its judgment in that case. I content myself with referring to the able and exhaustive opinion of Judge Staples, and the cases cited by him. That case has been recently (on our late session at Wytheville) recognized as binding authority by. the unami-mbus voice of this court. (See Bland and Giles County Judge case, supra 443.)
These two cases affirm the proposition which I first lay down: That under the true construction of the Constitution a judge elected and commissioned to fill an unexpired term, is entitled to take the office for the full term.
Second. The question then recurs (Judge Barksdale being entitled under the decisions of this court to the full term though elected to fill the unexpired term of Judge Leigh), *519 when did Judge Barksdale’s term of the office begin and when does it end?
It is proper to prevent any confusion or misconstruction of the several decisions of this court with respect to the county judges, briefly to refer to the cases already decided by this court. The first case before this court was that of the Henrico county judgeship. Waddill and Minor were the contestants for the office in that case:
Minor was elected in 1873. He went into office on the 1st January, 1874. His term of office being six years as prescribed by the Constitution, it ended on the 1st January, 1880. But Waddill having been elected in January, 1880, it was insisted that his term of office did not begin until 1st January, 1881, under that provision of the Constitution which declares that “the term of office of all judges shall commence on the first day of January next following their appointment;” *and it was contended by Minor’s counsel that he must continue to hold the office until Waddill’s term commenced to-wit. 1st January, 1881. The court held in that case that Waddill was the rightful judge of Henrico from the day he qualified under his appointment and commission. The case was argued before a court of three judges (Moncure, Anderson and Christian), and while they all agreed that Judge Wad-dill should at once enter upon the office, their conclusions were based upon essentially different grounds. Judges Moncure and Anderson were of opinion, that the term of office of Judge Waddill commenced on the 1st January, 1880, before he was elected. I was of opinion that under that provision of the Constitution which declares that “their (the judges) terms of office shall commence on the first day of January next following their appointment,” Judge Waddili’s term did not commence until 1st January, 1881. But I was of opinion that under that provision of the Constitution which declares that “judges and all other officers elected or appointed shall continue to discharge the duties of their office after their terms of service have expired until their successors have qualified.” Judge Minor having been in the office for the full term of six years, could onlv hold the office until his successor qualified, and Waddill his successor having qualified, was at once entitled to the office.
1 was further of opinion that while Wad-dill’s term of office did not commence until the 1st of January, 1881, yet under that provision of the Constitution which declared (after fixing in all cases the period when the term of office should commence), that “they shall discharge the duties of their respective offices from their first appointment under this Constitution until their terms begin,” he (Waddill) entered at once upon the office. See 32 Graft. 779.
*The next ease was what is known as the Manchester Judge case.
Tn that case. Judge Clopton was elected judge of the corporation court in March. 1871. Judge French was elected by the legislature in January, 1880. The unanimous opinion of this court, then consisting of four judges was, that Judge Clopton’s term commenced on the 1st of January, 1875, and expired on the 31st of December, 1880; and that Judge French’s term (he having been elected in January. 1880.) does not commence until 1st of January, 1881. This was the unanimous opinion of the court; but it is proper to say that Judges Moncure and Anderson concurred in the opinion upon the ground, that Judge Clopton was the first judge of the corporation court of Manchester, and that the provision of the Constitution above quoted applied to his case.
The next case we had before us was the Bland and Giles County Judge case.
In that case (Judge Anderson and Judge Moncure absent), it was held that Judge Easley, who was elected in December, 1874, was entitled to hold the office till the 1st day of January, 1881. Judge Wylie who was elected in December, 1879, and who was commissioned and qualified and took his seat on the bench of the courts of said counties, was removed upon writ of quo warranto, or proceedings in the nature of such writ by the circuit court of Giles upon the ground that the term of office of Judge Easley did not expire till the first of January, 1881; which was affirmed by this court.
It was thus definitely determined that under the true construction to be given to the provisions of the Constitution, that the terms of office of all the judges commence on the 1st day of January next following their appointment.
*These cases must govern the case before us. It is only necessary to refer to them as authority without repeating the _reasons and authorities which controlled the judgment of the court in those cases. T will only quote a single paragraph from the opinion of the court in the Manchester case as conclusive of the case before us, as follows: “Now it must be conceded that the framers of the Constitution had the unquestioned right not only to fix the term of all officers elected under it, but also to declare at what time the terms of such officers should begin. This, the Constitution has declared in respect to the judges in plain and unequivocal terms using this emphatic language — ‘Their terms of office shall commence on the first day of January next following their appointment; and they shall discharge the duties of their respective offices from their first appointment and qualification under this Constitution until their terms begin.’ ”
As was said in that case, 1 think “there can be no mistake or difference of opinion as to the construction to be given to these plain words of the Constitution.”
Upon the authority of these cases it is plain that Judge Barksdale havingbeen elected and qualified as judge of the county court of Halifax in January. 1874, his term of office commenced, by the express terms of the Constitution, on the 1st day of January next following his appointment, to-wit, on the 1st day of January, 1875, and his term of office fixed by the Constitution being six years expires on the 31st December, 1880. *520 It also follows that Judge Armistead having been elected on the 27th January, 1880, his term of office does not commence until the 1st day of January, 1881.
It has been argued, that Judge Barksdale had abandoned and forfeited his office by yielding to the claims of Judge Armistead, and engaging in the practice of law *in this court. Precisely the .same point was made in the Giles and Bland County Judge case. But this court held that this was no abandonment or forfeiture of the office. See that case and authorities there cited as conclusive of the case before us.
Judge Barksdale, in making no protest or objection to the holding of the county court by Judge Armistead, and in becoming a practitioner as ah attorney in that court, did not forfeit his office. He 'simply yielded for the time to the executive and legislative construction of the Constitution, which had been given by the election of Armistead by the general assembly, and his commission by the governor. But as soon as this court had determined the question that a judge elected to fill an unexpired term was in office for the full term, and had also declared when, under the true construction to be given to the Constitution, the terms of office of the county judges commenced and terminated, he at once asserted his right's by instituting the proceeding which forms the foundation of the case before us.
It follows from these views and the former decisions of this court, that when the petitioner Estes was committed to the custody of the sheriff by Wm. R. Barksdale, that he (Barksdale) was the lawfully constituted judge of the county court of Halifax county, and had authority to fine and commit the petitioner Estes for contempt. He must, therefore, be remanded to the custody of the sheriff of Halifax.
I am further of opinion, that although Hon. Wm. R. Barksdale is the lawfully constituted judge of Halifax county court until the 1st December, 1880, when his term of office expires, yet all the judicial acts of Judge Armistead heretofore done are valid and binding, having been done under color of authority conferred by the legislative and executive branches of *the government. He was a judge de facto, and his judgments, decrees, and orders must (when otherwise right and proper) be recognized as valid and binding.
The conclusion is, that the petitioner must be remanded "to the custody of the sheriff of Halifax until he pays the fine imposed by Judge Barksdale for his contempt in refusing to obey his order.
ANDERSON, STAPLES, and BURKS, Js., concurred in the opinion of Christian, J.
The judgment was as follows:
This cause which'is pending in this court at its place of session at Wytheville, having been heard but not determined at said place of session: This day came here the parties by their counsel, and the court having maturely considered the record and proceedings in the case, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the petitioner, James P. Estes, is not illegally detained by the defendant, Henry A. Ed-mondson, sheriff of Halifax county, but is in the lawful custody of said respondent. It is therefore adjudged and ordered that the petitioner, the said James P. Estes, be remanded to the custody of said sheriff of Halifax county.
And it is further ordered that this order be entered on the order book here and forthwith certified to the clerk of this court at Wytheville. who shall enter the same on his order book.
Discharge refused.